# In the United States Court of Federal Claims

No. 06-851T

(Filed June 26, 2007)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **CHARLES P. DANIELS, JR., and LINDA M. DANIELS,** | * | Tax; tax refund; jurisdiction; full-payment rule. |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

Catherine M. Brown, Morristown, NJ, for plaintiffs.

Benjamin C. King, Jr., Washington, DC, with whom was Assistant Attorney General Eileen J. O'Connor, for defendant.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

The case is before the court after argument on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Defendant contends that plaintiffs failed to pay the taxes that are the basis of their refund claim. The troubling aspect of this case is that plaintiffs find themselves in an untenable position after plaintiff Charles P. Daniels exercised a large quantity of stock options in a technology corporation. He did not sell the stock, and the dot.com bubble burst. Consequently, he was left with a large tax obligation for the stock, assessed at its publicly traded value as of the date the options were exercised, and worthless stock to fund it.

## FACTS

Charles P. Daniels, Jr., and Linda M. Daniels ("plaintiffs") are claiming a refund of taxes paid for tax year 2000. The following facts are drawn from plaintiffs' complaint and

the documents attached to the parties' briefs. They are undisputed, unless otherwise indicated. Mr. Daniels was an executive and founding officer in 1995 of Nextlink Communications, LLC, a privately held telecommunications company. In 1997 the company became a publicly held corporation known as Nextlink, Inc. ("Nextlink"), and membership units were converted into shares of common corporate stock. 1/ As an executive officer of Nextlink, Mr. Daniels became eligible for unqualified incentive stock options. Mr. Daniels was terminated in December of 1999 and exercised his remaining stock options on January 12, 2000. On this date Mr. Daniels became the registered owner of 235,226 shares of Nextlink stock with a reported trading value of $70.9375 per share. During 2000, however, the stock devalued steadily, the corporation became insolvent, and by 2001 the stock was valued at zero.

Plaintiffs filed a joint tax return for the 2000 tax year during or near to October 2001, duly reporting the trading price as $70.9375 per share and using this standard of measure to calculate an adjusted gross income of $14,599,852.00 and a tax liability of $5,551,756.00. Federal income tax withheld for the year totaled $3,950,169.00.

Plaintiffs filed an amendment to their tax return on or about April 13, 2003, taking the position that $70.9375 was not the stock's fair market value on the date that the options were exercised due to fraud on the market. Plaintiffs alleged:

> The trading price is not the indicia of the fair market value per 26 U.S.C. 83 and 1001(b) because the precipitous decline which occurred during calendar year 2000 was directly caused by conditions which (a) occurred prior to January 12, 2000, (b) were not generally known in securities industry as of January 12, 2000 and c)) involved both fraudulent and criminal activity on the part of and the issuance of fraudulent financial reports by stock analysts who analyzed and reported upon the stock value of Nextlink, Inc. and other telecommunications companies.

Compl. filed Dec. 13, 2006, ¶ 15. The amended return claimed an adjusted gross income of $925,813.00, taxes to be paid totaling $107,495.00, a federal tax withholding of $4,148,443.00, and an overpayment and refund owed of $4,040,948.00. On March 24, 2005, the Internal Revenue Service (the "IRS") disallowed plaintiffs' amended tax return. The IRS denied plaintiffs' appeal of this disallowance on January 23, 2006. Upon disallowance of

---

1/ Nextlink changed its name to XO Communications in September 2000. All references to XO Communications are to Nextlink for continuity and clarity.

the amendment and denial of the appeal, the unpaid taxes owed by plaintiffs totaled $1,673,081.82, as derived from the self-reported figures on their original tax return.

The Certificate of Assessments, Payments, and Other Specified Matters, Form 4340, indicates that plaintiffs and the IRS discussed an offer in compromise on or about August 2002. 2/ Almost two years later, the IRS rejected this offer on May 4, 2004.

After the IRS denied plaintiffs' appeal and rejected their offer in compromise, plaintiffs filed suit in the United States District Court for the District of New Jersey, invoking 28 U.S.C. § 1346(a)(1) (2000). Daniels v. United States, No. 06-3415(KSH), 2007 WL 498284 (D.N.J. Feb. 9, 2007). Plaintiffs argued that no assessment had been made against them. Id. at * 1. However, they did not challenge the full-payment rule of Flora v. United States, 357 U.S. 63 (1958), aff'd on reh'g, 362 U.S. 145, 177 (1957). The district court held that IRS Form 4340 was proof of a valid assessment against plaintiffs and granted defendant's motion to dismiss for lack of jurisdiction because plaintiffs had not paid the full amount of assessed tax liability required by Flora. Daniels, 2007 WL 498284, at *1.

Plaintiffs filed their complaint in the United States Court of Federal Claims on December 13, 2006. IRS Form 4340 reflects that, to date, plaintiffs have made tax payments totaling $3,955,025.19. They have not yet paid the $1,673,081.82 balance to the IRS representing the remainder of taxes assessed in 2000 and interest due.

## DISCUSSION

1. Standard of review and jurisdiction

In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court's "task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. The court therefore must accept as true any undisputed allegations of fact made by the plaintiff. See Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

However, upon challenge to the court's subject matter jurisdiction, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of

---

2/ Details about the offer in compromise and other steps taken by plaintiffs to navigate the shoals of the administrative process are not a matter of record.

the evidence." Id. at 748; see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (holding that "[i]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof"). In its examination of jurisdiction, the court is not limited to the complaint; instead, the "court may consider relevant evidence in order to resolve the factual dispute." Reynolds, 846 F.2d at 747; see also Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (holding that "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged").

"Because it is a sovereign, the United States may be sued only to the extent that it has consented to suit by statute, and the terms of that consent define the jurisdiction of the court to hear those suits." Shore v. United States, 9 F.3d 1524, 1525 (Fed. Cir. 1993) (citing United States v. Testan, 424 U.S. 392, 399 (1976)). The Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), defines the jurisdictional reach of the Court of Federal Claims and "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc); see also Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 211, 220, aff'd, 264 F.3d 1071, 1080 (Fed. Cir. 2001). The Tucker Act grants the court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

Congress has manifested the requisite consent and enacted a money-mandating statute with respect to suits involving the refund of federal tax payments in 28 U.S.C. § 1346(a). In conjunction with the Tucker Act, section 1346(a)(1) establishes jurisdiction in the Court of Federal Claims over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ." However, pursuant to the Supreme Court's full-payment rule, full payment of all taxes assessed is a jurisdictional prerequisite. See Flora, 362 U.S. at 177; see also Shore, 9 F.3d at 1527 ("The *Flora* full payment rule requires that taxpayers prepay the tax principal before the Court of Federal Claims will have subject matter jurisdiction over their tax refund action under § 1491."); Rodewald v. United States, 231 Ct. Cl. 962, 963-64 (1982) ("Plaintiff makes the specific request for monetary relief, but does not contend that he has fully paid the taxes. Until he does so, we cannot hear his claim for a refund.")

2. The parties' positions

Defendant contends that the court lacks subject matter jurisdiction over plaintiffs' refund claims because plaintiffs have not paid the full amount of liability assessed against

them. Defendant further contends that the court lacks jurisdiction to prevent the collection of taxes properly assessed by the IRS.

Plaintiffs have alleged that they are owed a significant tax refund because the assessment of their liability was based upon a fraudulent and improperly calculated stock price. Plaintiffs further imply that denying them the opportunity to petition the Government in court amounts to an abridgement of their First Amendment rights and a denial of substantive due process.

1) Jurisdiction pursuant to 28 U.S.C. § 1346(a)(1)

In response to defendant's invocation of the full-payment rule, plaintiffs do not dispute that they have not paid the amount of taxes assessed on their original income tax refund. Instead, plaintiffs seek to re-characterize Flora to provide jurisdiction in the instant case or, in the alternative, to establish that the Court of Federal Claims is not bound by the Flora precedent.

Plaintiffs' attempt to re-characterize the holding in Flora is two-fold. First, plaintiffs assert that the Tucker Act acts as a modern-day mechanism to allow common law actions of assumpsit against the tax collector. This is an untenable reading of the holding in Flora. Despite discussion of actions for assumpsit, the Court was "not satisfied that the suit against the collector was identical to the common-law action of assumpsit for money had and received," 362 U.S. at 153, and the Court's decision in Cheatham v. United States, 92 U.S. 85 (1876), "prevent[ed] [the Court] from accepting the analogy between the statutory action against the Collector and the common-law count." Flora, 362 U.S. at 153. Section 1346(a)(1)'s historical ties to the common law action of assumpsit do not provide jurisdiction for the court to hear plaintiffs' refund claims.

Plaintiffs additionally argue "what was just as salient to the Court's analysis *in Flora* was that the aggrieved taxpayer there had a meaningful judicial forum, even if that forum was an Article I court." Pls.' Br. filed Apr. 25, 2007, at 8. Thus, "*Williams* and *Flora* make clear that [the] Supreme Court interprets 28 U.S.C. 1346(a)(1) to require a substantive judicial forum to a taxpayer who has a *bona fide* refund dispute." Id. at 1; see United States v. Williams, 514 U.S. 527, 529 (1995) ("[W]e do not believe Congress intended to leave parties in respondent's position without a remedy.").

Although plaintiffs correctly assert that the Supreme Court has emphasized the necessity of providing taxpayers a forum in which to bring their grievances, this acknowledged objective does not provide the court with jurisdiction to hear plaintiffs' claim. Section 1346(a)(1) and the jurisdictional provisions governing the United States Tax Court

provide adequate fora for taxpayers and form "a system in which there is one tribunal for prepayment litigation and another for post-payment litigation, with no room contemplated for a hybrid . . . ." Flora, 362 U.S. at 163. Thus, if a taxpayer is barred from bringing, or does not wish to bring, suit in Tax Court, section 1346(a)(1) provides an alternative forum for a tax refund suit in either federal district court or the Court of Federal Claims. 3/ Specific limitations govern this provision, as characteristic of most jurisdictional grants. "Section 1346(a)(1) is a postdeprivation remedy, available only if the taxpayer has paid the Government in full." Williams, 514 U.S. at 538. Even though Williams emphasized the importance of providing a taxpayer an adequate forum in which to seek remedy, to secure

---

3/ Plaintiffs may bring suit in Tax Court for two types of relief:

1) Plaintiffs may file suit within 90 days of an IRS-issued deficiency notice. See 26 I.R.C.§ 6213(a) (2000). A deficiency notice is issued when tax imposed by the IRS exceeds "the sum of . . . the amount shown as the tax by the taxpayer upon his return." I.R.C. § 6211 (2000).

2) Plaintiffs may bring a collection due process action, pursuant to I.R.C. § 6320 (2000), and 26 I.R.C. § 6330 (2000). Section 6320 requires the IRS to notify a taxpayer of his right to a hearing within five business days of filing a notice of federal tax lien. Section 6330 requires the IRS to notify a taxpayer of his right to a hearing within thirty days prior to levy. In such collection due process actions,

> [t]he person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

I.R.C. § 6330(c)(2)(B); see also I.R.C. § 6620(c)) (applying particular provisions of section 6330, including section 6330(c)(2)(B), to actions pursuant to section 6620).

In the instant case, the IRS did not impose additional liabilities upon plaintiffs, and the tax assessed was the amount reported in plaintiffs' tax return. Because, by definition, no deficiency existed, although plaintiffs had not paid the full amount of assessed liability as reported on their 2000 tax return, no deficiency notice issued, and plaintiffs were unable to bring suit in response to a notice of deficiency. Plaintiffs may be entitled to file a collection due process action pursuant to I.R.C. § 6330 or § 6320 after mandated notification of government lien or levy. See *infra* note 4.

such a forum a taxpayer must pay the full amount of tax assessed regardless of extraordinary circumstances and concomitant hardship.

Plaintiffs further argue that the Supreme Court did not extend the Flora full-payment rule to the United States Court of Claims, nor to its successor, the Court of Federal Claims, asserting that the court should reconsider or depart from the application of Flora. See Pls.' Br. filed Apr. 25, 2007, at 16 ("As for the full payment rule, the Supreme Court never applied that rule to the Court of Federal Claims; the Court of Federal Claims did.").

The Court of Claims, predecessor to the Court of Federal Claims and genesis of precedent binding on the Court of Federal Claims, adopted the full-payment rule of Flora in Tonkasket v. United States, 218 Ct. Cl. 709 (1978). 4/ Plaintiffs in Tonasket sought to

---

4/ Tonasket was reported at 590 F.2d 343 as one of a table of "Decisions by Order Without Published Opinions" and published in the Court of Claims Reporter at 218 Ct. Cl. 709. The version of Tonasket found at www.westlaw.com incorrectly lists this order under the following header: "NOTICE: THIS IS AN UNPUBLISHED OPINION. (The Court's decision is referenced in a 'Table of Decisions Without Reported Opinions' appearing in the Federal Reporter. Use FI FCL CT Rule 52.1 for rules regarding the citation of unpublished opinions.)" Contrary to this designation, the United States Court of Appeals for the Federal Circuit has cited to and relied upon Tonasket as binding precedent. See Shore, 9 F.3d at 1526 ("The full payment requirement of Section 1346(a)(1) and *Flora* applies equally to tax refund suits brought in the Court of Federal Claims under Section 1491." (citing Tonasket, 218 Ct. Cl. at 711-712; Katz v. United States, 22 Cl. Ct. 714, 714-15 (1991)).

An unbroken line of authority requiring full-payment as a jurisdictional prerequisite has issued from the Federal Circuit. See Ledford v. United States, 297 F.3d 1378 (Fed. Cir. 2002) (dismissing plaintiff's complaint because plaintiff had not yet paid assessed tax for which he sought a refund); Shore, 9 F.3d at 1526 ("Where the principal tax deficiency has not been paid in full, such tax refund claims are dismissed, regardless of any interest or penalty payments."); Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991) ("The full payment rule of Flora has long been applied by the Claims Court, and before that by the Court of Claims, to dismiss tax refund suits against the United States when the assessment has not been paid in full prior to commencement of the action.").

This court "is bound to accept as binding precedent all published decisions of the former Court of Claims, 'unless and until modified by decisions of the United States Court of Appeals for the Federal Circuit or the United States Supreme Court.'" West Seattle Gen. Hosp., Inc. v. United States, 1 Cl. Ct. 745, 746 (1983) (quoting General Order No. 1 of the

establish that Flora did not apply to refund suits in the Court of Claims. The Court of Claims rejected this argument, holding that the court could not "construe *Flora* to preclude part-payment tax suits in district courts, but allow[] such part-payment actions [in the Court of Claims]." Tonasket, 218 Ct. Cl. at 711.

> Although the precise holding of *Flora* requires full payment before tax suits in district courts, the *ratio decidendi* of that ruling-that full payment before suit is necessary to preserve the harmony of a carefully structured tax litigation system . . . must extend to require full payment before suit in the Court of Claims.

Id. at 712. The Court of Claims elaborated on this reasoning and applied the Flora full-payment rule in Rodewald:

> In Flora v. United States, 362 U. S. 145 (1960), the Supreme Court, after careful consideration and reconsideration, interpreted 28 U.S.C.§ 1346(a)(1) as requiring a taxpayer to pay fully the taxes assessed for a given year before a federal district court may entertain a refund suit. We have found the rationale and holding of that decision equally applicable to suits here.

231 Ct. Cl. at 963 (citing Tonasket, 218 Ct. Cl. at 711-12, and Green v. United States, 220 Ct. Cl. 712, 713 (1979)).

Under Flora and section 1346(a)(1), plaintiffs are afforded the opportunity to bring a tax refund suit, provided that they meet the jurisdictional prerequisite of full payment of assessed tax liabilities. See Flora, 362 U.S. at 177. The Flora full-payment rule, properly interpreted and properly applied to the Court of Federal Claims, prohibits exercise of

---

4/ (Cont'd from page 7.)

United States Claims Court). But see S. Corp. v. United States, 690 F.2d 1368, 1369 (Fed. Cir. 1982) ("We hold that the holdings of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, announced by those courts before the close of business September 30, 1982, shall be binding as precedent in this court."). The Federal Circuit has extended this rule to holdings, such as Tonasket, that are embodied in orders published in the Court of Claims Reports, although not in West Group publications.

jurisdiction over plaintiffs' claims pursuant to section 1346(a)(1) because they have not paid their assessed tax liability in full.

2) Plaintiffs' constitutional claims

Plaintiffs' implied constitutional claims do not come within the jurisdiction of the Court of Federal Claims. Even if plaintiffs imply claims against the Government for violations of the United States Constitution, the Court of Federal Claims may hear such claims only if the constitutional provisions under which the claims are brought are "money-mandating." Fisher, 402 F.3d at 1172; see also Khan v. United States, 201 F.3d 1375, 1377 (Fed. Cir. 2000) ("[T]o invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute, or regulation that provides a substantive right to money damages."). While plaintiffs' allegations may implicate the First Amendment right to petition the Government for redress of grievances and the Due Process Clause of the Fifth Amendment, these provisions do not mandate payment of money by the Government.

"[T]he first amendment, standing alone, cannot be . . . interpreted to command the payment of money." United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983) (en banc) (adhering to Court of Claims decision in Featheringill v. United States, 217 Ct. Cl. 24, 32-33 (1978)); see also Hamlet v. United States, 63 F.3d 1097, 1107 (Fed. Cir. 1995); Rosano v. United States, 9 Cl. Ct. 137, 142 (1985), aff'd, 800 F.2d 1126 (Fed. Cir. 1986) (per curiam). "[T]he literal terms of the first amendment neither explicitly nor implicitly obligate the federal government to pay damages." Connolly, 716 F.2d at 887. Therefore, plaintiffs' First Amendment claim cannot serve as the basis for jurisdiction for a suit in the Court of Federal Claims.

A claim based upon the Fifth Amendment alone is also insufficient to invoke the jurisdiction of the Court of Federal Claims. See LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that claims under Due Process Clauses of Fifth and Fourteenth Amendments, Equal Protection Clause of Fourteenth Amendments, and doctrine of Separation of Powers do not invoke jurisdiction of Court of Federal Claims); see also Crocker v. United States, 125 F.3d 1475, 1476-77 (Fed. Cir. 1997) (holding that Court of Federal Claims lacks jurisdiction to hear due process claims).

Because plaintiffs' complaint does not implicate a money-mandating provision of the Constitution, the court lacks jurisdiction over plaintiffs' constitutional claims.

## CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the complaint pursuant to RCFC 12(b)(1) without prejudice for lack of subject matter jurisdiction. 5/

**IT IS SO ORDERED**.

No costs.

s/ Christine O.C. Miller

______________________________________

**Christine Odell Cook Miller**
Judge

---

5/ Pursuant to 28 U.S.C. § 1631 (2000), "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." See Nat'l Ctr. for Mfg. Sciences v. United States, 114 F.3d 196 (Fed. Cir. 1997) ("The federal transfer statute, 28 U.S.C. § 1631, provides that a court may transfer an action to another court if the transferor court lacks jurisdiction to hear the action and the transferee court would have jurisdiction.").

The court must consider, prior to dismissal, whether transfer is appropriate in each case. See Fisherman's Harvest, Inc. v. PBS & J, 2007 WL 1774922, at *2 (Fed. Cir. June 21, 2007); Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005). During argument plaintiffs did not indicate a willingness to investigate or pursue a transfer to the Tax Court because no notice of deficiency issued. See *supra* note 3.